United States District Court
Eastern District of New York

---X

JOSHUA D. LEGUM,

*Plaintiff,*

v.

JACOB GARFINKEL, a/k/a COBY E. GARFINKEL, JON PALMIERI, EMERALD OAK CAPITAL, LLC, and 5G FUNDING LLC,

*Defendants.*

---X

COMPLAINT
23 Civ.
Plaintiff demands trial by jury.

Plaintiff as and for his complaint respectfully allege:

1. Plaintiff is a resident and domiciliary of the State of Florida.

2. Upon information and belief, defendant Jon Palmieri ("Palmieri") is a resident and domiciliary of the State of New York and resides and transacts business within the County of Suffolk.

3. Upon information and belief, Jacob Garfinkel, a/k/a Coby E. Garfinkel ("Garfinkel") is a resident and domiciliary of the State of Illinois.

4. Upon information and belief, Emerald Oak Capital, LLC ("Emerald") is a limited liability company existing by virtue and under the laws of the State of Delaware. It maintains a presence within the State of New York and transacts business in the State of New York.

5. Upon information and belief, 5G Funding, LLC ("5G") is a limited liability company existing by virtue and under the laws of the State of Delaware. It maintains a presence within the State of New York and transacts business in the State of New York.

6. Upon information and belief, Garfinkel is the owner of a majority interest in Emerald and 5G and the chief executive officer of each of those entities.

7. Upon information and belief, Palmieri is the owner of a minority interest in Emerald and 5G and the chief financial officer of each of those entities.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1313, and 18 U.S.C. § 1964. It also has jurisdiction over plaintiffs' state law claims by virtue of diversity jurisdiction

conveyed upon this Court pursuant to 28 U.S.C. § 1367 in that there is complete diversity and the amount in controversy is in excess of $75,000.00, exclusive of interests and costs.

9. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 in that, upon information and belief, many of the acts set forth herein by the defendants took place within the Eastern District of New York.

10. In or about November 30, 2021 Garfinkel approached plaintiff and solicited him to invest in 5G, advising him that he and his entity, 5G, were raising funds to purchase receivables.

11. On December 2, 2021, Garfinkel advised plaintiff that his partner was the chief financial officer of a large real estate company with whom he was transacting business and that he was bringing this individual and his firm deals. He further advised plaintiff that he was allowed to retain whatever portion of those deals that he wanted. Plaintiff declined to invest.

12. In January, 2023 Garfinkel again contacted plaintiff. He advised plaintiff that he was opening a new entity, Emerald, in which he was requesting plaintiff to invest. While representing to plaintiff at the time that all funds were to be used to purchase receivables, such representation was false. Funds were being raised for the continuation of the defendant's Ponzi scheme, begun, upon information and belief, in 2019, whereby Garfinkel, and upon information and belief, Palmieri, and the entities with which they were associated, were utilizing some of the funds raised to pay older investors, other funds were being skimmed off by Garfinkel and, upon information and belief, Palmieri, and the remaining funds were being utilized to purchase receivables which Garfinkel falsely represented to be the only purpose for the funds.

13. Garfinkel directed that the funds be wired to Emerald to expedite the transaction.

14. On February 27, 2023 plaintiff wired, at Garfinkel's direction, the sum of $153,000.00 to Emerald.

15. Immediately prior thereto, per Garfinkel's representations, the wired funds were to be used for the purchase of receivables, except that a commission would be taken to be paid to third parties if such third

party(ies) was responsible for identifying and referring the merchant. Garfinkel further stated that all funds received from the merchants in repayment were to be forwarded to plaintiff until he was repaid the amount advanced. Thereafter, all funds received were to be split equally between plaintiff and Garfinkel and/or Emerald.

16. Over the following three months, plaintiff was requested and did wire an additional $362,122.08 to Emerald under the same terms and conditions.

17. At Garfinkel's request and direction, on March 22, 2023, plaintiff wire transferred $55,768.00 to Emerald on the same terms and conditions.

18. At Garfinkel's request and direction, on March 28, 2023, plaintiff wire transferred $152,602.62 to Emerald on the same terms and conditions.

19. At Garfinkel's request and direction, on March 29, 2023, plaintiff wire transferred $37,837.00 to Emerald on the same terms and conditions.

20. At Garfinkel's request and direction, on March 31, 2023, plaintiff wire transferred $25,000.00 to Emerald on the same terms and conditions.

21. At Garfinkel's request and direction, on May 5, 2023, plaintiff wire transferred $85,914.46 to Emerald on the same terms and conditions.

22. Each of the foregoing transfers were made after conversations with Garfinkel which took place the day of the transfer or the prior day, at which Garfinkel represented that the funds were being used solely to purchase receivables from BICC of Osceola County LLC, Sports & Imports Inc., Oil City Lawn and Garden, and P & L Mechanical Contractor and would be repaid as per the terms set forth *supra*.

23. At no point did Garfinkel or Emerald forward any funds received from the merchants to plaintiff even though payments were being received by them on a daily basis and even though, per the ledger maintained by Palmieri in his capacity as chief financial officer, there was approximately $250,000 collected with respect to the transactions funded by the plaintiff.

24. On June 29, 2023, plaintiff requested that a wire transfer be made in the sum of $200,000.00 out of the funds which defendants Garfinkel, Palmieri, and Emerald were representing were being held for him. Garfinkel advised plaintiff that he was directing Palmieri, as chief financial officer, to wire the funds as requested. When the funds were never wired, plaintiff made numerous requests of Garfinkel for an explanation. Garfinkel failed to respond.

25. On July 1, 2023, plaintiff received a text message from Haskell Garfinkel requesting that he call him. Haskell Garfinkel, in the telephone conversation, advised plaintiff that he, who, upon information and belief, is an attorney, advised his son not to send money to anyone until he (Haskell Garfinkel) had the opportunity to have an accountant review the books and records as there appeared to be "issues" with the 5G entity and its investors.

26. Plaintiff subsequently learned that funds that he advanced were used to pay other investors and to support Garfinkel's lavish lifestyle and gambling problem.

27. Defendants have failed and refused to return any funds which they represented that they were holding in a fiduciary capacity for the plaintiff. Upon information and belief, defendants continue to receive funds, none of which have been paid to plaintiff.

28. Upon information and belief, the defendants have followed this same pattern with respect to all of the defendant entities and have since in or about 2019 defrauded approximately twenty–four investors out of sums, the exact amount which is unknown by virtue of the fact that the defendants have failed to account although due demand has been made upon them, of at least $5,000,000.00.

29. At the time that Garfinkel represented to plaintiff that the funds he was advancing were to be used solely to purchase receivables on behalf of Emerald, he knew the same to be false in that funds advanced by plaintiff were used in furtherance of defendants' Ponzi scheme to pay prior investors out of funds received from new investors and to support Garfinkel's lavish lifestyle and gambling problem.

30. At the time that Garfinkel represented to plaintiff that the funds he (plaintiff) was advancing

would be repaid to plaintiff as payments were being received, defendant knew the same to be false in that funds received were being and were to continue to be used in furtherance of defendants' Ponzi scheme to pay prior investors out of funds received from new investors and to support Garfinkel's lavish lifestyle and gambling problem.

31. The information and representations made to plaintiff contained false and fraudulent information as set forth *supra*. Garfinkel knew the same to be false and made such false and fraudulent representation to induce plaintiff to forward his funds so that they could be diverted in furtherance of defendants' Ponzi scheme and to support Garfinkel's lavish lifestyle and gambling problem.

32. The foregoing representations by Garfinkel were being made to induce plaintiff to forward funds which Garfinkel intended to and did convert.

33. Plaintiff forwarded sums totaling at least $510,122.08, to the defendants which sums were forwarded to be used only for the purpose of purchasing receivables, as represented to him. Instead, the funds were used in furtherance of defendants' Ponzi scheme and to support Garfinkel's lavish lifestyle and gambling problem.

34. In furtherance of their scheme to defraud, defendants utilized electronic transmission over interstate telephone wires, telephone calls over interstate telephone wires, and wire transactions.

35. In furtherance of their scheme to defraud, defendants' activities affected interstate commerce.

36. Upon information and belief, the defendants have, for almost four years prior to the actions which form the basis of this complaint, engaged in this Ponzi scheme. The scheme was designed to continue for an indefinite period of time and would, upon information and belief, be continuing, but for the fact that the defendants were unable to find new investors to support the Ponzi scheme.

37. Prior to perpetrating the fraud upon the plaintiff, upon information and belief, defendants have perpetrated a similar fraud with the same scheme utilizing 5G.

38. The acts set forth herein are part of a continuing scheme by the defendants to defraud.

39. In the normal course of events, it was not until defendants defaulted in paying the sums collected on behalf of the investors that the plaintiffs and others similarly situated would be able to and in fact did learn of the falsity of the information provided to them, upon which they relied.

40. But for the aforesaid fraudulent representations upon which plaintiff and the others similarly situated justifiably relied, they would not have forwarded funds to the defendants.

41. The funds forwarded to the defendants were converted and secreted by them and transferred to pay pre–existing creditors and parts of which were retained and converted by the defendants.

42. There remains due and owing to the plaintiff from the defendants the sum of at least $510,122.08.

FIRST COUNT

43. Each of the defendants is a person within the meaning of 18 U.S.C. § 1961 (3).

44. Emerald and 5G were enterprises within the meaning of 18 U.S.C. § 1961 (4).

45. An association in fact exists consisting of all defendants within the meaning of the statute.

46. Each of the enterprises was engaged in interstate commerce and their activities affected interstate commerce.

47.The acts set forth herein by which the defendants defrauded plaintiff of funds were predicate acts in furtherance of the defendants' ongoing scheme to defraud.

48. The pattern of racketeering activity began, upon information and belief, years ago. It had its first effect upon plaintiff in June, 2023 when defendants refused to return funds which they were holding on his behalf in a fiduciary capacity. The scheme continued with respect to plaintiff until plaintiff learned that defendants were not going to repay any of the funds which he advanced. But for the fact that plaintiff learned that defendants were not going to repay such funds forwarded to them via interstate wires, the scheme to defraud would be continuing.

49. Each of the defendants committed or aided and abetted in the commission of at least two predi-

cate acts of racketeering including wire fraud in violation of 18 U.S.C. § 1343. These acts constitute a pattern of racketeering activity under 18 U.S.C. § 1961 (1).

50. Each of the defendants conducted or participated, directly or indirectly, in the operation and management of the enterprises' affairs through the pattern of racketeering activity set forth above.

51. All of the predicate acts have been pursued with the common purpose of defrauding plaintiff of his property. The pattern of racketeering involved multiple acts and multiple victims.

52. As a direct and proximate result of the acts and conduct of the defendants, plaintiff has been injured in his business and property within the meaning of 18 U.S.C. § 1964 (c) in the sum of at least $510,122.08.

53. Plaintiff is entitled to treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorneys' fees.

## SECOND COUNT

54. Each of the defendants conspired to violate 18 U.S.C. § 1962 (c) by agreeing to commit two or more predicate acts of racketeering.

55. Each of the defendants committed acts of wire fraud which constitutes a pattern of racketeering activity.

56. As a direct and proximate result of the acts and conduct of the defendants, plaintiff has been injured in his business and property within the meaning of 18 U.S.C. § 1964 (c) in the sum of at least $510,122.08.

57. Plaintiff is entitled to treble damages pursuant to 18 U.S.C. § 1964, together with interest, costs, and attorneys' fees.

## THIRD COUNT

58. In carrying out their scheme to defraud, defendants converted the funds of plaintiff.

59. The funds of the defendants to the extent of $510,122.08 are the property of plaintiff and the

Court should impress a trust thereon.

60. In addition, plaintiff is entitled to compensatory damages in the sum of $510,122.08, consequential damages, including attorneys' fees, in an amount as yet unknown but believed to be in excess of $150,000.00, and punitive and exemplary damages against each defendant in the sum of $10,000,000.00.

## FOURTH COUNT

61. Defendant Garfinkel made representations to plaintiff as to the purpose for which the funds he forwarded would be used, the repayment of same, and that as payments were being received, they would be held for him in what would be a fiduciary capacity.

62. The information conveyed, as aforesaid was not accurate and truthful.

63. By virtue of the foregoing, defendants have perpetrated a fraud upon plaintiff.

64. By virtue of the foregoing, plaintiff is entitled to damages in the sum of $510,122.08.

65. In addition, plaintiff is entitled to compensatory damages in the sum of $510,122.08, consequential damages, including attorneys' fees in an amount as yet unknown but believed to be in excess of $150,000.00, and punitive and exemplary damages against each defendant in the sum of $10,000,000.00.

WHEREFORE, plaintiff respectfully prays for judgment against Jacob Garfinkel, a/k/a Coby E. Garfinkel, Jon Palmieri, Emerald Oak Capital, LLC, and 5G Funding LLC, jointly and severally on the first count in the sum of $510,122.08, together with treble damages, and attorneys' fees, on the second count in the sum of $510,122.08, together with treble damages, and attorneys' fees, on the third count in the sum of $510,122.08 as and for compensatory damages, $150,000.00 as and for consequential damages, and $10,000,000.00 from each defendant as and for punitive and exemplary damages and to impress a trust on the property of the defendants to the extent of $510,122.08, together with interest, costs, and disbursements.

Dated: Mineola, New York
August 23, 2023

STEVEN G. LEGUM
*Attorney for Plaintiff*
170 OLD COUNTRY ROAD
MINEOLA, NEW YORK 11501
(516) 873-9300

by:____________________________
STEVEN G. LEGUM